UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUBAIR AHMAD,

            Petitioner,

   v.

ISRAEL JACQUEZ,

            Respondent.

Case No. C19-1216-TSZ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, a federal inmate at the Federal Detention Center in SeaTac, Washington ("FDC SeaTac"), initiated this 28 U.S.C. § 2241 habeas action *pro se* to challenge the Bureau of Prisons' ("BOP") interpretation and application of the First Step Act's ("FSA") amendments to 18 U.S.C. § 3621(b). (Pet. (Dkt. # 4).) In response to the petition, Respondent argues that the Court does not have jurisdiction over Petitioner's claims. (Resp. (Dkt. # 6).) Counsel subsequently appeared on behalf of Petitioner and filed a reply, clarifying Petitioner's claims, disputing Respondent's arguments regarding jurisdiction, and addressing the merits of the legal issues raised by the petition. (Reply (Dkt. # 13).) The parties then filed a stipulated motion asking for leave to file supplemental briefs, which the Court granted. (Dkt. ## 16, 17.) The

REPORT AND RECOMMENDATION - 1

parties filed their supplemental briefs (Supp. Resp. (dkt. # 18); Supp. Reply (dkt. # 21)), and the matter is ripe for review. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's habeas petition be DISMISSED without prejudice for lack of jurisdiction.

## II.   BACKGROUND

In September 2001, Petitioner was arrested in the Eastern District of Virginia and charged with providing material support and resources to a terrorist organization in violation of 18 U.S.C. § 2239B and making a false statement in violation of 18 U.S.C. § 1001(a)(2). *See United States v. Jubair Ahmad*, 11-cr-544-TSE, Dkt. # 1 (E.D. Va.). Petitioner pleaded guilty to the material support charge. *Id.*, Dkt. ## 41, 42, 43. On April 13, 2012, he was sentenced to serve a 144-month sentence of imprisonment followed by five years of supervised release. *Id.*, Dkt. # 52. His current projected release date is February 13, 2022.

On May 5, 2017, Petitioner was transferred to FDC Sea-Tac due to an increase in prison population. (Dkt. # 13-4 at 4.) On January 6, 2019, he requested a transfer to a facility within 500 driving miles of his primary residence in Woodbridge, Virginia, citing 18 U.S.C. § 3621(b). (*Id.* at 2.) Section 3621(b), as amended by the FSA, provides:

> **Place of imprisonment**—The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal

Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

**(1)** the resources of the facility contemplated;

**(2)** the nature and circumstances of the offense;

**(3)** the history and characteristics of the prisoner;

**(4)** any statement by the court that imposed the sentence—

    **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    **(B)** recommending a type of penal or correctional facility as appropriate; and

**(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person. Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.

18 U.S.C. § 3621(b) (2018).

The BOP denied Petitioner's request because he is a citizen of Pakistan who is subject to a U.S. Immigration and Customs Enforcement ("ICE") detainer and therefore is not eligible for "nearer release transfer." (Dkt. # 13-4 at 4, 7, 10.) "Nearer release transfers move the inmate closer to their legal residence or release destination, consistent with their security level." (BOP

Program Statement ("P.S.") 5100.08 (Dkt. # 13-2) at 7.)[1] Under P.S. 5100.08, inmates subject to ICE detainers are not eligible for nearer release transfers because "they will be returning to the community outside, rather than inside, the United States upon release." (*Id.*)

Petitioner initiated the instant habeas action in August 2019. (Dkt. # 1.) He challenges the denial of his transfer request and the BOP's interpretation of the FSA's amendments to § 3621(b). (*See* Pet.) In his briefs filed through counsel, he asserts several reasons why P.S. 5100.08 exceeds the BOP's authority under § 3621(b). (*See generally* Reply; Supp. Reply.) He also raises due process and equal protection challenges. (*See generally* Reply; Supp. Reply.) Respondent argues that the Court does not have jurisdiction over Petitioner's claims and that P.S. 5100.08 is a proper exercise of BOP authority and did not violate Petitioner's constitutional rights. (Resp.; Supp. Resp.)

### III.   DISCUSSION

This case raises two jurisdictional questions: (1) whether the Court has jurisdiction over a challenge to the BOP's denial of an individual's request for a transfer under § 3621(b); and (2) whether the Court has jurisdiction over a challenge to P.S. 5100.08's interpretation of § 3621(b). For the reasons discussed below, the Court concludes that it does not have jurisdiction to consider Petitioner's claims.[2]

As to the first question, the statute clearly precludes jurisdiction: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b); *see also Ellis v. United States*, No. 19-395, 2019 WL 3021141, at *2 (N.D. Tex. June 18, 2019) (court does not have "authority to compel the

---

[1] "Program statements are internal agency guidelines [that] may be altered by the [BOP] at will . . . ." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) (internal quotation marks omitted, alterations in original).

[2] Therefore, the Court does not reach the merits of Petitioner's claims.

REPORT AND RECOMMENDATION - 4

BOP to make any placement decisions under the Act"). Petitioner does not dispute this conclusion and claims he is not raising such an individual challenge. (Reply at 2-3.) Nevertheless, he challenges the denial of his request for a transfer (Pet. at 2) and asks the Court to transfer him to a facility within 500 miles of his primary residence in Virginia (Reply at 2), indicating an individual challenge. Thus, the Court concludes that any individual challenge to the BOP's denial of Petitioner's request for a transfer under § 3621(b) should be denied for lack of jurisdiction.

With respect to the second jurisdictional question, Petitioner seeks to challenge P.S. 5100.08, arguing that the statement does not comply with the statute and violates his due process and equal protection rights; as relief, he suggests the Court order the BOP to amend the program statement to remedy the identified issues. (Reply at 2-3; Supp. Reply at 4-5.) Respondent argues, without citation to legal authority, that "these claims do not offer a basis to avoid the statutory limitation on review of a designation decision." (Supp. Resp. at 5.) The Court does not agree. Considering the BOP's interpretation of § 3621(b) as reflected in the Program Statement is not a review of "*a* designation of *a* place of imprisonment." 18 U.S.C. § 3621(b) (emphases added). Therefore, it is not prohibited by the terms of the statute.

Respondent also argues that Petitioner's claims cannot be considered in this § 2241 action and must be brought, if at all, in a civil rights or declaratory judgment action. (Supp. Resp. at 5-6.) It can be difficult to draw the line between claims that are properly brought in habeas and those that may be brought through a civil rights action. *Dist. Atty's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 76 (2009) (Alito, J., concurring). The Ninth Circuit has stated in dicta that "petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d

861, 864 (9th Cir. 2000) (per curiam). The Ninth Circuit has entertained § 2241 habeas petitions challenging, for example, the BOP's discretionary denial of a designation that would have shortened the prisoner's federal sentence, *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016); the BOP's denial of a request for a transfer to a residential reentry center ("RRC"), *Rodriguez v. Smith*, 541 F.3d 1180, 1181 (9th Cir. 2008); the BOP's policies regarding restitution payments, which the prisoner argued improperly intruded on the district court's sentencing authority, *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 549 (9th Cir. 1998) (per curiam); the BOP's determination regarding eligibility for an early release incentive through the BOP's Residential Drug Abuse Program ("RDAP"), *see Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009); *Abbott v. Fed. Bureau of Prisons*, 771 F.3d 512, 513-14 (9th Cir. 2014); and the BOP's ranking system for placing eligible inmates on the RDAP wait list, which the petitioners argued improperly failed to maximize their opportunity for a one-year sentence reduction, *Close v. Thomas*, 653 F.3d 970, 974 (9th Cir. 2011). The Ninth Circuit has also recognized that a prisoner may properly seek § 2241 habeas relief from "the imposition of disciplinary sanctions involving forfeiture of statutory good time or segregation from the general prison population." *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc).

The Ninth Circuit has not considered a § 2241 habeas petition involving transfers between BOP prisons. District courts in this Circuit routinely dismiss such petitions for lack of jurisdiction. *See, e.g.*, *Fiorito v. Entzel*, No. 17-1894, 2017 WL 6372649 (C.D. Cal. Dec. 11, 2017) (no habeas jurisdiction over complaint regarding prison transfer); *Izac v. Unknown Warden*, No. 14-2040, 2014 WL 1794452 (C.D. Cal. May 6, 2014) (same); *Nostratis v. Surgue*, No. 09-126, 2009 WL 462732 (E.D. Cal. Feb. 23, 2009) (request for transfer challenges

conditions of confinement and cannot be brought in habeas action); *Burnette v. Smith*, No. 08-2178, 2009 WL 667199 (E.D. Cal. Mar. 13, 2009) (no habeas jurisdiction over challenge to denial of transfer to another facility, collecting cases); *Christian v. Deboo*, No. 06-1806, 2007 WL 470587 (E.D. Cal. Feb. 9, 2007), *R & R adopted*, 2007 WL 1239000 (E.D. Cal. Apr. 27, 2007) (no habeas jurisdiction over denial of transfer claim).

The U.S. Courts of Appeals that have addressed the issue are divided. In an unpublished decision, the Eleventh Circuit held that a prisoner properly challenged the execution of his sentence under § 2241 when he alleged that the BOP's denial of his requested transfer to a minimum-security prison violated his due process rights. *Williams v. Flournoy*, 732 Fed. Appx. 810, 811 (11th Cir. 2018) (holding that the court had jurisdiction and that the denial of the transfer request did not violate due process).[3]

In contrast, the Tenth and Third Circuits have held that habeas jurisdiction does not include such claims. In *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012), the Tenth Circuit held that a prisoner's challenge to the BOP's choice of prisons and request to be transferred from one BOP detention facility to another was a challenge to the conditions of his confinement that must be brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.* at 1036. In reaching this conclusion, the court distinguished its earlier decision in *Montez v. McKinna*, 208 F.3d 862 (10th Cir. 2000), which assumed § 2241 jurisdiction over a state prisoner's challenge to his transfer to an out-of-state prison. *Palma-Salazar*, 677 F.3d at 1036. *Palma-Salazar* reasoned that *Montez* was properly brought under § 2241 because the prisoner in that case challenged "the fact or duration

---

[3] The Second Circuit has not considered a factually analogous case but has broadly described § 2241 jurisdiction as including challenges to prison transfers. *See*, *e.g.*, *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (holding that court had jurisdiction over challenge to denial of transfer to RRC and describing matters challengeable under § 2241 as including "prison disciplinary actions, prison transfers, type of detention and prison conditions").

REPORT AND RECOMMENDATION - 7

of his confinement in Colorado," a state other than the one in which he had been convicted and sentenced. *Id.* (quoting *Montez*, 208 F.3d at 865); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (challenge to fact or duration of physical imprisonment must be brought in habeas action, not civil rights action).

The Third Circuit has reached the same result as the Tenth Circuit in at least three unpublished decisions. *Johnson v. Warden Lewisburg USP*, 653 Fed. Appx. 95 (3d Cir. 2016) (per curiam) (holding that prisoner could not bring § 2241 habeas action to challenge his transfer between two high-security prisons, reasoning that such a claim addressed the conditions of his confinement); *McCall v. Ebbert*, 384 Fed. Appx. 55 (3d Cir. 2010) (per curiam) (holding that challenge to prison transfer addressed conditions of confinement, not execution of sentence, and therefore could not be brought in § 2241 action); *Ganim v. Fed. Bureau of Prisons*, 235 Fed. Appx. 882 (3d Cir. 2007) (per curiam) (holding that prisoner could not bring § 2241 habeas action to challenge the denial of his request for a transfer closer to family). In *Ganim*, the prisoner argued, among other things, that the BOP's Program Statement interpreting § 3621(b) violated the statute. *Ganim v. Fed. Bureau of Prisons*, No. 06-2957, 2006 WL 2847239, at *3 (D.N.J. Sept. 28, 2006). The district court denied this claim on the merits. *Id.* The Third Circuit reversed, concluding that the district court should not have reached the merits because the court did not have jurisdiction. *Ganim*, 235 Fed. Appx. at 884. The court provided a well-reasoned explanation for its holding:

> "[T]he precise meaning of 'execution of a sentence' [remains] hazy." [*Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242 (3d Cir. 2005)]. In *Woodall*, considering rulings from the Courts of Appeals of the Second, Sixth, Ninth, and Tenth Circuits, and the plain meaning of the term "execution" (to put into effect or carry out), we allowed a § 2241 challenge to regulations that limited a prisoner's placement in a community correction center ("CCC"). *See id.* at 243. We noted that "[c]arrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution." *Id.* Specifically, in finding Woodall's

REPORT AND RECOMMENDATION - 8

action properly brought pursuant to § 2241, we determined that "placement in a CCC represents more than a simple transfer." *Id.* We stated that "Woodall's petition crosse[d] the line beyond a challenge to, for example, a garden variety prison transfer." *Id.*

Ganim, who challenges a decision not to transfer him from federal prison in New Jersey to a similar facility in New York, does not cross the line that Woodall crossed. Ganim presents a challenge to a decision relating to a simple or garden variety transfer. The cases we cited approvingly in *Woodall* were not challenges to routine transfers. We relied in particular on *Jiminian v. Nash*, 245 F.3d 144 (2d Cir. 2001), *Hernandez v. Campbell*, 204 F.3d 861 (9th Cir. 2000), *United States v. Jalili*, 925 F.2d 889 (6th Cir. 1991), and *Montez v. McKinna*, 208 F.3d 862 (10th Cir. 2000).

*Jiminian* used expansive language to state that "a motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." 245 F.3d at 146. However, *Jiminian* was a case about whether 28 U.S.C. § 2255 was an inadequate or ineffective remedy for a prisoner who attempted to use § 2241 to raise claims that had been rejected in his first § 2255 motion. *Id.* at 145-46. The court in *Jiminian* cited *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997), as authority for its list of appropriate uses of a § 2241 petition. *See Jiminian*, 245 F.3d at 146. However, *Chambers* itself only lists examples of § 2241 petitions challenging the calculation or length of sentences. *See* 106 F.3d at 474-75 (citing cases from the Second, Fifth, and Eighth Circuits).

*Hernandez*, like *Jiminian*, described the use of § 2241 in broad strokes, noting that petitions under § 2241 are those "that challenge the manner, location, or conditions of a sentence's execution." *Hernandez*, 204 F.3d at 865. However, also like *Jiminian*, *Hernandez* dealt with the savings clause of § 2255, which allows a § 2241 petition when a § 2255 motion is inadequate or ineffective to test the legality of a detention. *See id.* at 864-66. The cases that the *Hernandez* court cited in support of its proposition, *Doganiere v. United States*, 914 F.2d 165, 169-70 (9th Cir. 1990), and *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980), both related to parole decisions. The routine transfer that Ganim has in mind is far removed from a determination about the length of a sentence. The BOP review of the transfer request, which is the real relief that Ganim seeks (Appellant's Brief at 5), is even farther removed.

The prisoner in *Jalili* challenged the execution of his sentence, arguing that his confinement in a secure prison instead of a community treatment center violated the terms of his sentence. *See* 925 F.2d at 891-92. As in *Woodall*, and unlike Ganim's case, the difference between the two facilities was great. Similarly, the transfer at issue in *Montez* was no simple transfer within the same system—the prisoner challenged transfers from a Wyoming state-operated prison to a private

REPORT AND RECOMMENDATION - 9

> Texas correctional facility and from the Texas facility to a private Colorado correctional facility. *See* 208 F.3d at 864.
>
> We find further support for our distinction of Ganim's case from Woodall's in *Pischke v. Litscher*, 178 F.3d 497 (7th Cir. 1999). In *Pischke*, the court held that "habeas corpus cannot be used to challenge a transfer between prisons . . . unless the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about . . . 'a quantum change in the level of custody.'" *Id.* (citations omitted). While we did not look for a quantum change in *Woodall*, in that case, we noted many distinctions between a traditional correctional facility and a CCC when we considered the two types of confinement. *See* 432 F.3d at 243 (noting that at CCCs, unlike in prison, inmates may be eligible for short-term releases for daily work in the community, overnight and weekend passes, and longer furloughs). We do not find such distinctions here between a federal prison in New Jersey and a federal prison in New York, both of which have the same security level.

*Id.* at 883-84 (footnotes omitted). For these reasons, the Third Circuit concluded that the prisoner's claims were not properly brought under § 2241. *Id.*; *see also Dazza v. Hollingsworth*, No. 12-7568, 2013 WL 6187422 (D.N.J. Nov. 26, 2013) (dismissing "garden variety" transfer request); *Buenrostro v. Zickefoose*, No. 12-7205, 2013 WL 144266 (D.N.J. Jan. 11, 2013) (same); *Gonzales v. Zickefoose*, No. 12-7160, 2012 WL 6652826 (D.N.J. Dec. 19, 2012) (same); *Hankerson v. Bledsoe*, No. 10-2185, 2011 WL 1457987 (M.D. Penn. Mar. 16, 2011) (same).

Neither the Seventh nor Eighth Circuits have directly addressed the issue, but they have decided cases that strongly suggest they would find "garden variety" transfer claims outside of their habeas jurisdiction. As noted above in *Ganim*, the Seventh Circuit in *Pischke* held that "habeas corpus cannot be used to challenge a transfer between prisons . . . unless the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about . . . 'a quantum change in the level of custody.'" 178 F.3d at 499 (internal citations omitted). In *Graham v. Broglin*, 922 F.2d 379 (7th Cir. 1991), the court held that the denial of work release was not a

REPORT AND RECOMMENDATION - 10

"quantum change" in custody level. *Id.* at 381. If work release is not a "quantum change," it appears that a "garden variety" prison transfer would not be considered such a change either.

In the Eighth Circuit, a habeas petition is improper "[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time . . . ." *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) (quoting *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (citing *Preiser*, 411 U.S. at 499)). At least one district court has relied on *Spencer* to dismiss for lack of jurisdiction a § 2241 habeas petition challenging the BOP's denial of a "garden variety" transfer request. *Watt v. Rivera*, No. 15-81, 2016 WL 1689004 (E.D. Ark. Apr. 1, 2016).

In sum, the weight of authority within the Ninth Circuit and among the other Courts of Appeals indicates that garden variety prison transfers do not fall within § 2241 jurisdiction. Petitioner's challenge to the BOP's interpretation of the prison designation and transfer provisions of § 3621(b) relates to such garden variety transfers. Accordingly, the Court concludes that it does not have jurisdiction over this action.

The three cases Petitioner cites in support of jurisdiction do not require a different conclusion. (*See* Reply at 2-3 (citing *Hernandez*, *Woodall*, and *Close*); Supp. Reply at 5-8.) Petitioner returns to the statement in *Hernandez* that "petitions that challenge the manner [and] location . . . of a sentence's execution must be brought pursuant to § 2241," 204 F.3d at 864, arguing that P.S. 5100.08 relates to the BOP's policy regarding the *manner* by which it determines the *location* where a prisoner will be held. (Supp. Reply at 6.) As discussed above, however, the clear majority of courts have held that habeas jurisdiction does not lie for challenges to "garden variety" transfer decisions, which necessarily implicate the location where a prisoner serves his sentence. And in *Ganim*, the Third Circuit determined that it did not have

habeas jurisdiction over the prisoner's claims, which included a challenge to the Program Statement's interpretation of § 3621(b). Aside from the dicta in *Hernandez*, Petitioner does not cite any cases supporting his claim that he is challenging the BOP's "manner" of executing his sentence. *Hernandez* itself is distinguishable because it involved the savings clause for § 2255, as the court in *Ganim* explained. *Woodall* is also distinguishable for the reason explained in *Ganim*, namely that a transfer to a CCC crosses the line from a "garden variety" transfer like the type at issue here.

Explaining why *Close* does not support Petitioner's jurisdictional argument requires a more extensive discussion that begins with *Reeb v. Thomas*, 636 F.3d 1124 (9th Cir. 2011). At issue in *Reeb* was whether a district court had subject matter jurisdiction to review the BOP's individualized RDAP determinations. *Id.* at 1225. "RDAP is an intensive drug treatment program for federal inmates with documented substance abuse problems." *Id.* "Treatment is conducted in a unit set apart from the general prison population and is followed by institutional and/or community-based transitional programs." *Id.* "Successful completion of RDAP can result in up to a one-year reduction in a prisoner's sentence." *Id.* The BOP found Reeb eligible for RDAP but later expelled him from the program. *Id.* He filed a § 2241 habeas petition challenging the BOP's decision to expel him and seeking both readmission into the program and a sentence reduction upon successful completion of the program. *Id.* at 1226. The government did not challenge the court's habeas jurisdiction. *See id.* Instead, it argued that the court was statutorily precluded from hearing the claim. *Id.* The Ninth Circuit agreed. *Id.* at 1226-27. The court explained that the Administrative Procedures Act ("APA") provides a cause of action for persons "'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action [. . .] ,' 5 U.S.C. § 702, but withdraws that cause of action to the extent that the relevant statute

'preclude[s] judicial review' or the 'agency action is committed to agency discretion by law,' *id.* § 701(a)." *Id.* at 1226. The court determined that in 18 U.S.C. § 3625[4], Congress precluded prisoners from bringing APA claims to challenge decisions made under § 3621, which included decisions regarding RDAP. *Id.* Therefore, "To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625." *Id.* at 1227. The court thus held that "federal courts lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621, such as Reeb's claim herein." *Id.* at 1228. The court noted, however, that "judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority . . . ." *Id.*

In *Close*, the petitioners challenged how the BOP prioritized their eligibility for entering RDAP, in other words, how the BOP determined the order in which prisoners were placed on the RDAP waitlist. 653 F.3d at 972. The specific question was "whether BOP should factor in the early release incentive when it determines how close inmates are to their release date." *Id.* The court explained,

> The issue is significant because demand for RDAP far exceeds its availability and 'proximity to release date' dictates inmates' priority on the long RDAP wait list. So if a nonviolent inmate is 24 months from the end of his term of imprisonment, should BOP rank him on the RDAP wait list as though he were only 12 months from the end of his term of imprisonment because he would be eligible for § 3621(e)'s early release upon successful RDAP completion?

*Id.* at 972-73. Like in *Reeb*, the court in *Close* assumed without discussion that it had habeas jurisdiction over the claim. It also concluded that the case fit within *Reeb*'s jurisdictional

---

[4] Section 3625, entitled "Inapplicability of the Administrative Procedures Act," provides: "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."

carveout: "Close and the other petitioners in this case do not challenge individualized determinations. Rather, they challenge the system that BOP uses to rank all RDAP-eligible inmates on the RDAP wait list." *Id.* at 974. Therefore, the court assumed jurisdiction. *Id.*

Like in *Close*, Petitioner alleges that the BOP's interpretation of § 3621(b), as amended by the FSA, exceeds its statutory authority. However, as explained above, the Ninth Circuit's statements regarding jurisdiction in *Close* and *Reeb* dealt with APA jurisdiction, not habeas jurisdiction. In both cases, the courts assumed without discussion that the claims fell within its habeas jurisdiction. Indeed, successful RDAP completion can lead to eligibility for early release, and claims affecting the length of detention fall squarely within habeas jurisdiction. *See Preiser*, 411 U.S. at 499-500. *Close* and *Reeb*, however, do not establish that where habeas jurisdiction is otherwise lacking, district courts may nonetheless entertain petitions because they fall within *Reeb*'s APA carveout.[5] Because the Court has concluded that it does not have habeas jurisdiction over Petitioner's claims, it declines to conclude that it can nonetheless exercise jurisdiction in this habeas action pursuant to the APA carveout.[6]

### IV.   CONCLUSION

The Court recommends that this action be DISMISSED without prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

---

[5] In *Reeb*, the court observed that "[m]yriad [§ 2241] cases examine the validity of BOP regulations and determinations." 636 F.3d at 1228 n.5 (collecting cases). Notably, the cases it collects involve the length of detention, specifically, early release, *Lopez v. Davis*, 531 U.S. 230, 232-33 (2001); *Crickon*, 579 F.3d at 988-89; *Arrington v. Daniels*, 516 F.3d 1106, 1116 (9th Cir. 2008), sentence reduction, *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999), and RDAP eligibility, *Mora-Meraz v. Thomas*, 601 F.3d 933, 935 (9th Cir. 2010).

[6] Respondent suggests that Petitioner could bring his claims in a civil rights or declaratory judgment action. Petitioner's supplemental reply did not address—and therefore did not dispute—this assertion. The Court does not express an opinion on the issue.

Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 10, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Thomas S. Zilly.

Dated this 23rd day of March, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge